**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| PFIZER INC.,<br><br>                    Plaintiff,<br><br>    vs.<br><br>JOHNSON & JOHNSON and JANSSEN<br>BIOTECH, INC.,<br><br><br>                    Defendants. | Civil Action No. 2:17-cv-4180 (JCJ) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO STAY DISCOVERY**

10134670v.6

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................1

STATEMENT OF FACTS ................................................................................................................2

ARGUMENT.....................................................................................................................................5

I.  THE LEGAL STANDARD.................................................................................................5

II.  DEFENDANTS' MOTION TO DISMISS MAY ELIMINATE OR NARROW
     DISCOVERY AND THE BENEFITS OF A STAY PENDING RESOLUTION
     OUTWEIGH ANY HARM ................................................................................................6

III.  GRANTING A STAY OF DISCOVERY WILL FACILITATE
      COORDINATION OF THE PFIZER AND CLASS CASES ............................................8

CONCLUSION..................................................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*19th St. Baptist Church v. St. Peters Episcopal Church*,
190 F.R.D. 345 (E.D. Pa. 2000)................................................................................5, 6, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................3, 7

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984) ............................................................................................7

*Chudasama v. Mazda Motor Corp.*,
123 F.3d 1353 (11th Cir. 1997) ..........................................................................................6

*City of Providence v. Johnson & Johnson et ano.*,
No. 2:17-cv-5058 ...................................................................................................................3

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
623 F.3d 147 (3d Cir. 2010)................................................................................................6

*Ghaffari v. Wells Fargo Bank NA*,
621 Fed. App'x 121 (3d Cir. 2015).....................................................................................6

*Local 295 IBT Employer Group Welfare Fund v. Johnson & Johnson et ano.*,
No. 2:17-cv-5570 ...................................................................................................................3

*McLafferty v. Deutsche Lufthansa A.G.*,
2008 U.S. Dist. LEXIS 81627 (E.D. Pa. Oct. 14, 2008).........................................6, 8

*Mutschler v. Downs*,
2017 U.S. Dist. LEXIS 46349 (M.D. Pa. March 29, 2017).......................................6

*N. Am. Communs., Inc. v. InfoPrint Solutions Co., LLC*,
2011 U.S. Dist. LEXIS 118388 (W.D. Pa. July 13, 2011) .......................................6

*National Employees Health Plan v. Johnson & Johnson et ano.*,
No. 2:17-cv-4326 ...................................................................................................................3

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
264 F.3d 344 (3d Cir. 2001)................................................................................................5

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Perelman v. Perelman*,
   2011 U.S. Dist. LEXIS 85470 (E.D. Pa. Aug. 3, 2011)...............................................................6

*Twin Cities Pipe Trades Welfare Fund v. Johnson & Johnson et ano.*,
   No. 2:17-cv-5371 ........................................................................................................................3

*UFCW Local 1500 Welfare Fund v. Johnson & Johnson et ano.*,
   No. 2:17-cv-4830 ........................................................................................................................3

*United States v. Pfizer, Inc.*,
   2017 U.S. Dist. LEXIS 96291 (E.D. Pa. June 22, 2017) ...........................................................8

*Weisman v. Mediq, Inc.*,
   1995 U.S. Dist. LEXIS 5900 (E.D. Pa. May 3, 1995) ...........................................................5, 6

*Welfare Fund of Plumbers Local Union No. 200 v. Johnson & Johnson et ano.*,
   No. 2:17-cv-5481 ........................................................................................................................3

**Other Authorities**

*Modeling the Effect of One-Way Fee Shifting on Discovery Abuse in Private
   Antitrust Litigation*, 78 N.Y.U. L. Rev. 1887, 1898–99 (2003) ...............................................7

Rule 12(b)(6)......................................................................................................................................6

Rule 23(g) ..........................................................................................................................................2

Rule 26(f) ...............................................................................................................................4, 5, 7, 9

10134670v.6

Defendants Johnson & Johnson and Janssen Biotech, Inc. (collectively, "Defendants") respectfully bring this motion seeking to stay discovery pending resolution of their motion to dismiss the Complaint filed by Pfizer Inc. ("Pfizer").

## PRELIMINARY STATEMENT

Defendants' motion to stay discovery should be granted for two reasons.

First, Defendants' pending motion is potentially dispositive and may obviate the need for discovery that will almost certainly be both extensive and expensive.  Alternatively, even if the motion is not granted in its entirety, the Court's ruling may narrow the parameters of the surviving case, which will have a bearing on the scope of discovery.  In either event, the parties will benefit from receiving the Court's ruling before charging headlong into discovery in a complex antitrust case.  The benefit of such a course far outweighs any harm that may result. Pfizer seeks money damages and has not sought a preliminary injunction.  To the extent any delay in the resolution of this case occasioned by a stay harms Pfizer, the harm will be reflected in Pfizer's damages claim.

Second, granting a stay will facilitate the efficient management of this case and related class actions.  Six such class actions are now pending before the Court that largely repeat the allegations of the Pfizer Complaint.  The class plaintiffs are not presently seeking discovery— they are working towards the appointment of interim class counsel (a disputed matter before the Court) and once that issue is resolved will file a Consolidated Amended Class Complaint ("CACC").  Assuming the CACC follows the basic allegations in the existing complaints, Defendants likely will move to dismiss the CACC when it is filed and, if necessary, to stay discovery in the class cases pending resolution of that motion.  Staying discovery while all of these preliminary issues are sorted out will help ensure that any discovery, to the extent it occurs,

1

can be conducted in an efficient and coordinated manner after motions are resolved.  Defendants

should not be required to deal with Pfizer's discovery demands and then later deal with

overlapping and potentially more expansive demands from other plaintiffs.

Defendants' motion to stay discovery should be granted.

## STATEMENT OF FACTS

Pfizer filed its Complaint against Defendants on September 20, 2017.  (Dkt. 1).  Pfizer

alleges that Defendants have engaged in anticompetitive conduct in violation of the Sherman and

Clayton Acts that prevented its biosimilar drug Inflectra from competing effectively with

Remicade.  (*See*, *e.g.*, *id.* at ¶¶ 5–16).  Pfizer notes that Remicade generated about $4.8 billion in

U.S. sales in 2016 alone and is among the best selling drugs in the world.  (*Id.* at ¶ 3).  Pfizer's

allegations attack a broad range of Defendants' provider and payor contracts and related market

practices. (*See*, *e.g.*, *id.* at ¶¶ 5–16).

Pfizer's filing spurred purported class-action complaints that echoed its allegations.  The

National Employees Health Plan filed its complaint on September 28, 2017 (2:17-cv-4326); the

UFCW Local 1500 Welfare Fund filed its complaint on October 27, 2017 (2:17-cv-4830); the

City of Providence filed its complaint on November 9, 2017 (2:17-cv-5058); The Twin Cities

Pipe Trades Welfare Fund filed its complaint on November 29, 2017 (2:17-cv-5371); the Welfare

Fund of Plumbers Local Union No. 200 filed its complaint on December 7, 2017 (2:17-cv-5481);

and the Local 295 IBT Employer Group Welfare Fund filed its complaint on December 12, 2017

(2:17-cv-5570).  These six cases are pending before this Court, and more may be still to come.

On November 21, 2017, the Court entered a stipulation in the class cases governing

consolidation and scheduling.  Pursuant to that Order, on December 12, 2017, plaintiffs' counsel

in the class-action cases that seek appointment as interim class counsel under Rule 23(g) filed

applications with the Court.  Two competing sets of proposals are now pending.  One proposal,

joined by the counsel for City of Providence, Twin Cities Pipe Trades Welfare Fund, and UFCW

Local 1500 Welfare Fund, provides for the appointment of a three-firm Plaintiffs' Steering

Committee and Liaison Counsel.  The other proposal, joined by counsel for National Employees

Health Plan, Welfare Fund of Plumbers Local Union No. 200, and Local 295 IBT Employer

Group Welfare Fund, proposes a single interim Class Counsel and an interim Liaison Counsel.

*National Employees Health Plan v. Johnson & Johnson et ano.*, 2:17-cv-4326 (Dkts. 35, 36).

The class action plaintiffs shall file a CACC 30 days after the Court's appointment of interim

class counsel.  Defendants shall answer, move, or otherwise plead in response to the CACC 45

days after it is filed.  *See National Employees Health Plan v. Johnson & Johnson et ano.*, No.

2:17-cv-4326 (Dkt. 21); *UFCW Local 1500 Welfare Fund v. Johnson & Johnson et ano.*, No.

2:17-cv-4830 (Dkt. 22); *City of Providence v. Johnson & Johnson et ano.*, No. 2:17-cv-5058

(Dkt. 8).[1]

On November 28, 2017, Defendants filed a motion to dismiss Pfizer's Complaint.  (Dkt.

27).  Defendants' motion to dismiss argues that Pfizer failed to satisfy the requirement of

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

to state a claim to relief that is plausible on its face.  In particular, Defendants argue that Pfizer

has failed to plead whether it can or has offered competitive pricing by offering bundles from its

own suite of pharmaceutical products, which is essential to establish antitrust injury.  Defendants

also argue Pfizer's complaint is devoid of any allegations that it attempted to compete with

---

[1] Three more recently filed cases, *Twin Cities Pipe Trades Welfare Fund v. Johnson & Johnson et ano.*, No. 2:17-cv-5371, *Welfare Fund of Plumbers Local Union No. 200 v. Johnson & Johnson et ano.*, No. 2:17-cv-5481, and *Local 295 IBT Employer Group Welfare Fund v. Johnson & Johnson et ano.*, No. 2:17-cv-5570, were filed after this stipulation was issued.  However, as noted above, plaintiffs in those cases have joined one or the other of the class counsel proposals.

Defendants' contracts with payers for favorable formulary placement, which is fatal to its attempts to show harm to competition or that it suffered antitrust injury. (*See* Dkt. 31).

Counsel for Pfizer and Defendants have conferred pursuant to Rule 26(f). That conference was attended by, among other counsel, Michael Gallagher (for Pfizer) and Adeel Mangi (for Defendants). Defendants apprised Pfizer that they intended to file a motion to dismiss and would seek to stay discovery pending its resolution. Pfizer stated its intention to oppose any motion to stay discovery. Pfizer proposed an agreement regarding narrowed discovery that could proceed by consent while a motion to dismiss was pending, but the parties were unable to reach agreement on scope.

On December 19, 2017 the parties filed a joint Rule 26(f) report. (Dkt. 38). As set forth therein, Pfizer contemplates expansive discovery in this lawsuit. For examples, with regard to the subjects of discovery, Pfizer states (*id.* at 6):

> Without limitation, Pfizer anticipates the need for discovery from J&J and third parties – including but not limited to insurers, GPOs, hospitals, and clinics – regarding a number of topics, including (1) J&J's contracts with insurers, providers, and other third parties for Remicade, (2) negotiations between J&J and third parties regarding contracting for Remicade, (3) J&J's contracting strategies for Remicade with respect to insurers, providers, and other third parties, (4) J&J's strategies for responding to the launch of biosimilars to Remicade, including the launch of Inflectra, (5) J&J's pricing, marketing, and sales strategies for Remicade, (6) transactional sales, rebate, and discount data for Remicade and products bundled with Remicade, (7) forecasts and budgets for Remicade, (8) profit and loss statements and cost data for Remicade, (9) evaluations and analyses of competing products, (10) product market evaluations and market share analyses and forecasts, (11) communications between J&J and third parties regarding sales, marketing, and pricing for Remicade, (12) communications between J&J and third parties regarding insurance coverage and reimbursement for Remicade and for biosimilars, and (13) evaluations and analysis of insurance coverage for Remicade and biosimilars, including Inflectra.

4

Pfizer also seeks leave for the parties to take up to 110 depositions, not counting any depositions specific to the class action cases. (*Id.* at 11). J&J has proposed narrower discovery parameters (*id.*), and the class action counsel have not weighed in on what they perceive to be the appropriate scope of discovery.   While both Pfizer and J&J state in that report the desire to coordinate discovery with the class action cases, Pfizer makes clear that it really has little interest in doing so. *Compare id.* at 6 ("Pfizer agrees that there may be opportunities to coordinate discovery with the class actions, for example, to avoid duplicative depositions, but there is no reason to delay discovery in the Pfizer case.") and *id.* at 5 ("J&J submits that any discovery should be coordinated between this case and the class action cases.").

## ARGUMENT

## I.    THE LEGAL STANDARD

Whether to stay discovery while considering a motion to dismiss is within the Court's sound discretion. *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001).  While the filing of a motion to dismiss does not automatically stay discovery, "a stay is proper where the likelihood that such motion may result in a narrowing or an outright elimination of discovery outweighs the likely harm to be produced by the delay." *19th St. Baptist Church v. St. Peters Episcopal Church*, 190 F.R.D. 345, 349 (E.D. Pa. 2000) (internal quotation marks omitted).  The Court should "carefully balance the relative benefit and harm that would ensue to each party from the grant or denial of a stay." *Id.*  Where "a pending motion to dismiss may dispose of the entire action and where discovery is not needed to rule on such motion, the balance generally favors granting a motion to stay." *Weisman v. Mediq, Inc.*, 1995 U.S. Dist. LEXIS 5900, at *5 (E.D. Pa. May 3, 1995).  Such a determination does not require the Court to "'form[] an opinion as to the merits'" of the motion, but rather to "consider the scope of the motion and ask whether it 'may potentially lead to' the end of the case, and whether it will

10134670v.6

provide the parties with 'full knowledge as to which claims are viable and, correspondingly, as to what discovery need occur.'" *Perelman v. Perelman*, 2011 U.S. Dist. LEXIS 85470, at *3 (E.D. Pa. Aug. 3, 2011) (quoting *Weisman*, 1995 U.S. Dist. LEXIS 5900, at *2) (alterations in original).  Motions to dismiss under Rule 12(b)(6) "should typically 'be resolved before discovery begins.'" *Ghaffari v. Wells Fargo Bank NA*, 621 Fed. App'x 121, 124 (3d Cir. 2015) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)).  Courts in this Circuit have frequently stayed discovery pending the resolution of potentially dispositive motions.  *See*, *e.g., Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 154 (3d Cir. 2010); *Mutschler v. Downs*, 2017 U.S. Dist. LEXIS 46349, at *2 (M.D. Pa. March 29, 2017); *N. Am. Communs., Inc. v. InfoPrint Solutions Co., LLC*, 2011 U.S. Dist. LEXIS 118388, at *9 (W.D. Pa. July 13, 2011); *McLafferty v. Deutsche Lufthansa A.G.*, 2008 U.S. Dist. LEXIS 81627, at *5 (E.D. Pa. Oct. 14, 2008); *Weisman*, 1995 U.S. Dist. LEXIS 5900, at *6.

## II.  DEFENDANTS' MOTION TO DISMISS MAY ELIMINATE OR NARROW DISCOVERY AND THE BENEFITS OF A STAY PENDING RESOLUTION OUTWEIGH ANY HARM

As noted above, Janssen's motion is potentially dispositive.  It challenges the sufficiency of Pfizer's complaint and the viability of the legal theory under which Pfizer purports to bring suit.  If the Court grants that motion, there may be no need for any discovery at all.  And even if the case is not dismissed in its entirety, the Court's ruling may narrow and inform the scope of relevant discovery.  *See Weisman*, 1995 U.S. Dist. LEXIS 5900, at *6 ("By imposing a stay while ruling on the motion, when discovery proceeds the parties will have full knowledge as to which claims are viable and, correspondingly, as to what discovery need occur.").

Given these facts, the Court should "carefully balance the relative benefit and harm that would ensue to each party from the grant or denial of a stay."  *19th St. Baptist Church*, 190 F.R.D. at 349.  Here, the benefits of staying discovery are readily apparent.  As the Supreme

6

Court noted in *Twombly*, there is an "unusually high cost of discovery in antitrust cases" and that they "can be expensive." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007).  The Supreme Court cited a variety of sources in support of that proposition, including *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) ("[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint."); *Modeling the Effect of One-Way Fee Shifting on Discovery Abuse in Private Antitrust Litigation*, 78 N.Y.U. L. Rev. 1887, 1898–99 (2003) (discussing the unusually high cost of discovery in antitrust cases); and the Manual for Complex Litigation, 4th Ed., § 30 (2004) (describing extensive scope of discovery in antitrust cases)).

This case will be no different.  If the Pfizer complaint survives dismissal, discovery will be extensive and complex.  As noted above, Pfizer's Rule 26(f) report makes clear that intends to pursue an expansive scope of both documentary and deposition testimony.  And even setting aside Pfizer's report and based solely on its complaint, discovery will likely include: (1) Janssen's contracts and certain communications with insurers, hospitals, and infusion clinics regarding both Remicade and the other products that Pfizer alleges are in Janssen's "bundle" (*see, e.g.*, Compl. ¶¶ 8–9, 65–68); (2) internal communications and deliberations regarding Janssen's response to the launch of Inflectra (*see, e.g.*, Compl. ¶¶ 55–56); (3) certain sales, price, and manufacturing cost information (*see, e.g.*, Compl. ¶¶ 5, 13, 40, 81); and (4) information about the various product markets that Pfizer has alleged *might* be the relevant market (Compl. ¶¶ 85–97).  Much of this discovery will include sensitive aspects of Janssen's business operations, the production of which will require careful review and designations after the negotiation of appropriate protective orders.  All of this will involve substantial time and expense

7

including attorneys' fees, the time of Janssen employees, and third-party vendor costs.  And, of course, Janssen will demand its own discovery to defend against Pfizer's claims, which will involve similar discovery with regard to Inflectra.

Where possible, the Court should "avoid wasting significant time and resources on what may be needless discovery."  *United States v. Pfizer, Inc.*, 2017 U.S. Dist. LEXIS 96291, at \*12 (E.D. Pa. June 22, 2017).  All of these costs will be avoided if the Court rules in Janssen's favor on its motion to dismiss and "delaying discovery until the Court can determine whether or not Plaintiffs have pled the facts necessary to proceed with the claim, may help to streamline the expensive discovery process, and, thereby, minimize the burden on counsel, parties and the Court."  *McLafferty*, 2008 U.S. Dist. LEXIS 81627, at \*5.

Pfizer will not be prejudiced if a stay is granted.  At worst, its case will be marginally delayed by the time it takes for the Court to decide Janssen's motion, which does not alter Pfizer's legal position.  Pfizer chose not to move for a preliminary injunction and will doubtless pursue claims for damages with regard to all periods when the challenged contracts remain in place.  And there are no special circumstances that require immediate discovery.  *See 19th Street Baptist Church*, 190 F.R.D. at 346 (finding that the presence of "aged and infirm" witnesses necessitated immediate discovery).  To the contrary, Pfizer will also benefit if unnecessary costly discovery is avoided.

## III.   GRANTING A STAY OF DISCOVERY WILL FACILITATE COORDINATION OF THE PFIZER AND CLASS CASES

A stay in discovery while the Court considers the motion to dismiss will also facilitate the efficient coordination of this case with the related putative class-action complaints brought against Defendants.  As noted above, class counsel are working towards the appointment of interim class counsel and will then file a consolidated pleading.  Defendants will likely move to

8

dismiss that CACC after it is filed because the failings in the existing class pleadings are likely beyond repair. The parties have not yet had an initial Rule 26(f) conference in the class cases, and no party has sought to take discovery.

Given the close relationship between the allegations, the Court may wish to consider Defendants' motions to dismiss the Pfizer and class complaints together. Regardless, if discovery does proceed in both cases, it should be coordinated so that Defendants do not have to engage in either documentary or deposition discovery twice. For example, J&J should not have to address Pfizer's document and information demands, negotiate search terms, scope issues and custodians only to then have to go through the same process again with the putative class, which may seek a different approach to one or more of these issues. The class cases are still at a preliminary stage, and issues of leadership in the class group are still being resolved. A consolidated pleading and a motion to dismiss will then follow. Allowing Pfizer to proceed with discovery now before a consolidated class complaint is even filed in the class cases risks coordination issues that can avoided through the grant of a stay.

## CONCLUSION

The Court should grant Defendants' motion for a stay of discovery.

Dated: December 22, 2017

> By:   /s/ Leslie E. John
> Leslie E. John (PA Id. No. 62290)
> Matthew I. Vahey (PA Id. No. 315920)
> BALLARD SPAHR LLP
> 1735 Market Street, 51st Floor
> Philadelphia, PA 19103
> Tel: (215) 665-8500
> john@ballardspahr.com
> vaheym@ballardspahr.com

9

10134670v.6

William F. Cavanaugh (admitted *pro hac vice*)
Adeel A. Mangi (admitted *pro hac vice*)
Jonathan H. Hatch (admitted *pro hac vice*)
Jamison Davies (admitted *pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel: (212) 336-2000
wfcavanaugh@pbwt.com
aamangi@pbwt.com
jhatch@pbwt.com
jmdavies@pbwt.com

Thomas O. Barnett (admitted *pro hac vice*)
Ashley E. Bass (admitted *pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Tel: (202) 662-6000
tbarnett@cov.com
abass@cov.com

*Counsel for Johnson & Johnson and Janssen Biotech Inc.*

10

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2017, I electronically filed the foregoing

Memorandum of Law in support of Defendants' Motion to Stay using the CM/ECF system,

which will send notification of such filing to all parties of record.

*/s/ Leslie E. John*

11

10134670v.6