UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PFIZER INC.,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>JOHNSON & JOHNSON and JANSSEN BIOTECH, INC.,<br><br>　　　　　　　　　Defendants. | Civil Action No. 2:17-cv-4180 (JCJ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

PRELIMINARY STATEMENT ....................................................................................................1

Argument ........................................................................................................................................2

I.       Pfizer's complaint is subject to dismissal for failure to plead antitrust injury .....................2

II.      Pfizer fails to allege facts demonstrating that it competed on price ....................................3

III.     Pfizer fails to allege that it offered multi-product bundles to compete for contracts
with payors or providers .......................................................................................................8

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen, Inc. v. F. Hoffman La Roche Ltd.*,
    581 F. Supp. 2d 160 (D. Mass. 2008) ...................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................2, 4, 11

*Balaklaw v. Lovell*,
    14 F.3d 793 (2d Cir. 1994).........................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................2, 4, 11

*Brotech Corp. v. White Eagle Int'l Techs. Grp., Inc.*,
    Civ. A. No. 03-232, 2004 U.S. Dist. LEXIS 11552 (E.D. Pa. June 21, 2004) ..........................2

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
    821 F.3d 394 (3d Cir. 2016)....................................................................................7, 10, 11

*In re EpiPen Mktg. Sales Practice & Antitrust Litig.*,
    2017 U.S. Dist. LEXIS 209710 (D. Kan. Dec. 21, 2017)..........................................................7

*In re Hypodermic Prods. Antitrust Litig.*,
    05-CV-1602, 2007 U.S. Dist. LEXIS 47438 (D.N.J. June 29, 2007)...........................6, 7, 8, 9

*Intellective, Inc. v. Mass. Mut. Life Ins. Co.*,
    190 F. Supp. 2d 600 (S.D.N.Y. 2002)......................................................................................4

*LePage's, Inc. v. 3M*,
    324 F.3d 141 (3d Cir. 2003).................................................................................7, 10, 11

*In re Lipitor Antitrust Litig.*,
    868 F.3d 231 (3d Cir. 2017)......................................................................................................6

*In re Loestrin 24 Fe Antitrust Litig.*,
    814 F.3d 538 (1st Cir. 2016)....................................................................................................6

*Menasha Corp. v. News Am. Mktg. In-Store, Inc.*,
    354 F.3d 661 (7th Cir. 2004) ...................................................................................................3

*Methodist Health Servs. Corp. v. OSF Healthcare Sys.*,
    No. 1:13-cv-01854, 2016 U.S. Dist. LEXIS 136478 (C.D. Ill. Sept. 30, 2016) .......................4

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) ..............................................................................................3, 11

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Nilavar v. Mercy Health System-Western Ohio*,
  494 F. Supp. 2d 604 (S.D. Ohio 2005) ...................................................................................4

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  614 F.3d 57 (3d Cir. 2010) ......................................................................................................3

*Schuylkill Energy Res. v. Pa. Power & Light Co.*,
  113 F.3d 405 (3d Cir. 1997) ....................................................................................................2

*SmithKline Beecham Corp. v. Apotex Corp.*,
  383 F. Supp. 2d 686 (E.D. Pa. 2004), *aff'd*, 439 F.3d 1312 (Fed. Cir. 2006) ...........3, 9, 10, 11

*SmithKline Corp. v. Eli Lilly & Co.*,
  427 F. Supp. 1089 (E.D. Pa. 1976) .....................................................................................9, 10

*SmithKline Corp. v. Eli Lilly & Co.*,
  575 F.2d 1056 (3d Cir. 1978) ................................................................................................10

*Spinelli v. NFL*,
  96 F. Supp. 3d 81 (S.D.N.Y. 2015) .........................................................................................3

*United States v. Dentsply Int'l, Inc.*,
  399 F.3d 181 (3d Cir. 2005) ....................................................................................................7

*United States v. Microsoft*,
  253 F.3d 34 (D.C. Cir. 2001) ..................................................................................................7

*Universal Hosp. Servs. v. Hill-Rom Holdings, Inc.*,
  Civ. A. No. SA-5-CA-32, 2015 U.S. Dist. LEXIS 154154
  (W.D. Tex. Oct. 15, 2015) .......................................................................................................9

*URL Pharma, Inc. v. Reckitt Benckiser, Inc.*,
  C.A. 15-505, 2015 U.S. Dist. LEXIS 112859 (E.D. Pa. Aug. 25, 2015) .................................7

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) ...............................................................................................7, 11

**Statutes**

42 U.S.C. § 1395w-3a(c)(2) ...........................................................................................................6

42 U.S.C. § 1396r-8(c) ...................................................................................................................6

**Other Authorities**

42 C.F.R. § 414.804(a)(4) ..............................................................................................................6

Defendants Johnson & Johnson and Janssen Biotech, Inc. (collectively "Janssen") respectfully submit this reply memorandum of law in further support of their motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Pfizer Inc.'s ("Pfizer") complaint.

## PRELIMINARY STATEMENT

Pfizer's opposition to Janssen's motion to dismiss ignores Janssen's fundamental argument, which is fatal to Pfizer's claim. While Pfizer devotes pages to Janssen's alleged efforts to compete with the introduction of Inflectra, Pfizer has not adequately pleaded what steps it took to compete. Without such factual allegations, it cannot show that it actually suffered any injury under the antitrust laws, which do not exist to protect competitors that fail to use the resources at their disposal to compete.

Pfizer's assertion that many of its allegations have gone unchallenged has no bearing on Janssen's motion. Should the case proceed, Janssen will rebut and ultimately disprove many of the erroneous allegations in Pfizer's complaint. But for purposes of this motion, the issue is whether Pfizer has pleaded the necessary element of antitrust injury. It has not for two reasons.

*First*, Pfizer's allegations are insufficient to show that it actually tried to compete by offering lower prices than Janssen. It does not dispute that WAC, as a list price, does not reflect the relevant competitive pricing dynamics given the rebates and discounts payors and providers expect. Pfizer's fallback, relying on published ASPs, is similarly unavailing. ASPs are published with a six-month lag, and those lagged prices are averages over a year-long period. Nor do ASPs isolate rebates or discounts to payors (as opposed to providers) or the degree to which government discounts are driving down Remicade prices. And most critically, Pfizer never alleges that its pricing to payors was actually lower than Janssen's. Merely alleging that Janssen chose to offer more attractive pricing and that as a result Pfizer sold less of its product is insufficient to state a claim under the antitrust laws.

1

*Second*, Pfizer does not dispute that it has made no effort to offer a competing product bundle, and does not contend that such an offering is beyond its capabilities. Rather, Pfizer argues that it is not obligated to show that it tried to compete with Janssen's rebates on multiple products using its own bundle, because its claims primarily turn on Janssen's allegedly exclusive contracts with payors and providers rather than Janssen's rebate and discount strategy. This puts the cart before the horse. As Pfizer's own allegations demonstrate, Pfizer and Janssen compete for formulary status with payors and utilization by providers. According to Pfizer, Janssen prevailed in many instances *by offering attractive discounts and rebates*. To the extent Pfizer can compete for those contracts by offering its own discounts and rebates, the contracts (and Janssen's rebating strategy) are not anticompetitive. Pfizer has not pleaded facts showing that it cannot compete for contracts with those same parties using similar means.

## ARGUMENT

### I. PFIZER'S COMPLAINT IS SUBJECT TO DISMISSAL FOR FAILURE TO PLEAD ANTITRUST INJURY

As a threshold matter, any suggestion by Pfizer that the adequacy of its allegations regarding antitrust injury should not be resolved on a motion to dismiss is meritless. *See* Opp. at 18. Pfizer does not dispute that it is required to plead sufficient facts to establish that it sustained antitrust injury, and courts in this Circuit and elsewhere—even prior to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)—have repeatedly dismissed complaints where a plaintiff fails to meet this pleading requirement. *See, e.g.*, *Schuylkill Energy Res. v. Pa. Power & Light Co.*, 113 F.3d 405, 414 (3d Cir. 1997) (affirming dismissal of amended complaint by supplier against utility for, *inter alia*, failure to plead antitrust injury where factual allegations failed to show alleged violations affected competition in the underlying consumer market); *Brotech Corp. v. White Eagle Int'l Techs. Grp., Inc.*, Civ. A.

2

No. 03-232, 2004 U.S. Dist. LEXIS 11552, at *18–22 (E.D. Pa. June 21, 2004) (dismissing antitrust counterclaim based, *inter alia*, on failure to plead antitrust injury as pleaded facts did not show that plaintiff's conduct would actually affect competition in the market); *see also NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc) ("[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law."); *SmithKline Beecham Corp. v. Apotex Corp.*, 383 F. Supp. 2d 686, 695 (E.D. Pa. 2004) ("[C]ourts can and do dismiss complaints that fail to allege an antitrust injury"), *aff'd*, 439 F.3d 1312 (Fed. Cir. 2006).

A finding that Pfizer has failed to plead antitrust injury requires dismissal.

## II. PFIZER FAILS TO ALLEGE FACTS DEMONSTRATING THAT IT COMPETED ON PRICE

Pfizer devotes a substantial portion of its opposition to its allegations that Janssen entered into contracts with payors that purportedly gave Remicade explicit or *de facto* exclusive status and precluded providers from prescribing Inflectra. Opp. at 18–21, 24–25. But merely pointing to exclusivity provisions cannot salvage Pfizer's claims, as exclusivity provisions on their own are often procompetitive. *See, e.g.*, *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010); *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004); *see also* Compl. ¶ 60 ("[E]xclusive contracts can—in certain circumstances—be perfectly appropriate … ."). Anticompetitive concerns only arise when an incumbent is able to preclude rivals from competing for those exclusive contracts. *See, e.g.*, *Balaklaw v. Lovell*, 14 F.3d 793, 799 (2d Cir. 1994); *Spinelli v. NFL*, 96 F. Supp. 3d 81, 117 (S.D.N.Y. 2015). A plaintiff does not suffer a cognizable antitrust injury if it simply loses out in a competition for an exclusive contract. *See Race Tires Am.*, 614 F.3d at 84–85 (noting that "competition among businesses to serve as an exclusive supplier should actually be encouraged" and that the plaintiff

3

could not show antitrust injury because it had the "clear opportunity to compete"); *Bakalaw*, 14 F.3d at 793 (holding that where hospitals were free to enter new contracts with anesthesiologists at the end of a six-month period there was no "foreclosure of competition" and consequently "no antitrust injury"); *Intellective, Inc. v. Mass. Mut. Life Ins. Co.*, 190 F. Supp. 2d 600, 613 (S.D.N.Y. 2002) (finding no antitrust injury where plaintiff simply lost the competition for an exclusive contract); *see also Nilavar v. Mercy Health System-Western Ohio*, 494 F. Supp. 2d 604, 618-19 (S.D. Ohio 2005) (same).[1]

It is critical to understand the nature of Pfizer's complaints about Janssen's alleged "exclusive" arrangements with payors or providers. Pfizer does not allege that payors and providers are contractually prohibited from walking away from their arrangements with Janssen if Pfizer makes them a better offer. In other words, Pfizer has not alleged that customers are locked up and unable to consider a Pfizer proposal. Pfizer simply alleges that payors and providers have declined to walk away from Janssen because apparently Pfizer has not provided them a good enough reason to do so based on the price or attributes of its competing product. Pfizer's generic references to its efforts to compete with Janssen through some form of discounting (*see, e.g.*, Opp. at 23 (citing Compl. ¶¶ 13, 46–47, 56 n.17, 65–66, 76, & 103–04)) do no more than show it lost its competition with Janssen, are insufficient to meet the requirements of *Iqbal* and *Twombly* that it plead facts showing a plausible claim to relief. Without sufficient allegations to show that the net price of Inflectra to payors was lower than that of Remicade, Pfizer cannot show that it is foreclosed from competing for contracts with those

---

[1] Defendants note that Janssen's opening brief cited a portion of *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, No. 1:13-cv-01854, 2016 U.S. Dist. LEXIS 136478 (C.D. Ill. Sept. 30, 2016) that reproduced one of the party's briefs. Opp. at 27–28. Regardless, as the cases cited above make clear, no antitrust injury occurs where the parties have an opportunity to compete for exclusive contracts.

payors, and thus that it suffered antitrust injury. The pricing measures pleaded by Pfizer are insufficient to make this showing, and Pfizer's arguments to the contrary fail.

As explained in Janssen's opening brief, Pfizer's allegations regarding pricing are based on Remicade and Inflectra's WACs and ASPs. *See* Corr. Opening Br. at 7–8. Pfizer does not dispute that WAC bears no direct relationship to the actual net prices offered to payors. Its allegations based on WAC are therefore irrelevant. While Pfizer argues that the list price (e.g., the WAC) for Remicade serves as a "penalty" to payors or providers who decline to enter into agreements with Janssen (Opp. at 11), this is no different than saying Janssen offers attractive rebates and discounts to its customers. And the risk of facing a higher list price absent rebates or discounts is equally true of Inflectra; payors are free to make a rational decision as to which drug has a more attractive price net of rebates, and enter into an agreement accordingly (or decline to enter into any agreement at all). While Pfizer cites one paragraph from its Complaint in which it generally alleged that it offered some sort of pricing concessions off of Inflectra's list price to payors and providers (Opp. at 26 (citing Compl. ¶ 46)), it includes no particularized allegations whatsoever explaining the extent of the discounts it supposedly offered to payors specifically.

As for its allegations regarding ASP, Pfizer concedes that the ASP figures lag the market by a minimum of two quarters, that ASP does not isolate rebates to payors (as opposed to providers), and that each ASP value incorporates information from the preceding months to calculate the average. *See* Opp. at 27 n.7. Therefore, at best, the September 2017 ASPs cited by Pfizer incorporate at most a few months of data after Inflectra's entry, and include Remicade prices *before* Inflectra was being marketed. Furthermore, ASP does not include discounts offered to the government, or to private hospitals participating in certain government programs. *See Amgen, Inc. v. F. Hoffman La Roche Ltd.*, 581 F. Supp. 2d 160, 218 (D. Mass. 2008) ("The ASP

5

is intended to represent the volume-weighted, average manufacturer sales price net of rebates and discounts to all United States purchasers excluding sales that are exempt from the Medicaid best price calculation and those to other federal purchasers."); *see also* 42 U.S.C. § 1396r-8(c); 42 U.S.C. § 1395w-3a(c)(2); 42 C.F.R. § 414.804(a)(4).

ASP is accordingly divorced from the realities of the current market. Pfizer's reliance on ASPs is therefore insufficient to show the impact on payors, or that Pfizer is incapable of competing for contracts with payors. And while Pfizer may not have access to all of the details of Janssen's pricing offers to all payors or providers (Opp. at 28), it certainly has access to its own pricing. But it has remained silent about the specific incentives it has offered to payors.[2]

Unable (or unwilling) to allege facts about the prices it has offered to payors, Pfizer's argues that it is not required to plead these facts in its Complaint. But this contention is unsupported by the law. Pfizer cites *In re Lipitor Antitrust Litigation*, 868 F.3d 231, 254 (3d Cir. 2017) for the proposition that "precise figures and calculations" are not required at the pleading stage, but fails to note that this is a quote from a reverse payment case regarding the need to provide "precise and particularized estimates of *fair value and anticipated litigation costs*." *Id.* (quoting *In re Loestrin 24 Fe Antitrust Litig.*, 814 F.3d 538, 552 (1st Cir. 2016)). This does not relieve Plaintiffs of the need to plead facts related to foreclosure from the market. Similarly, in *In re Hypodermic Products Antitrust Litigation*, 05-CV-1602, 2007 U.S. Dist. LEXIS 47438 (D.N.J. June 29, 2007), the plaintiffs included factual allegations demonstrating why they and the

---

[2] While Pfizer points to allegations that suggest that it offered a lower net price to certain *providers* (Opp. at 10), payors are conspicuously not referenced in those allegations.

defendants' competitors could not offer prices to compete with those of the defendant. *See id.* at *40. Pfizer includes no such allegations here.[3]

The other cases cited by Pfizer also do not advance its case, as they involve allegations that the defendant engaged in conduct beyond offering more favorable pricing to obtain exclusive contracts. *See, e.g.*, *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 286–87 (3d Cir. 2012) (defendant's pricing practices coupled with long-duration de facto exclusive contracts); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 185 (3d Cir. 2005) (defendant's policy involved termination of any commercial relationship if a purchaser carried competing products); *LePage's, Inc. v. 3M*, 324 F.3d 141, 155 (3d Cir. 2003) (defendant's prices achieved through bundled rebates with which plaintiff could not compete due to lack of other products on which to offer similar rebates); *United States v. Microsoft*, 253 F.3d 34, 70–71 (D.C. Cir. 2001) (exclusive dealing for one product used to preserve monopoly in different market); *In re EpiPen Mktg. Sales Practice & Antitrust Litig.*, 2017 U.S. Dist. LEXIS 209710, at *24, 27 (D. Kan. Dec. 21, 2017) (alleging that defendant misclassified product to federal and state governments to avoid payment of rebates to government payors in order to subsidize private payments and misrepresenting facts about competing products to customers); *URL Pharma, Inc. v. Reckitt Benckiser, Inc.*, C.A. 15-505, 2015 U.S. Dist. LEXIS 112859, at *21–23 (E.D. Pa. Aug. 25, 2015) (plaintiff alleged repudiation of settlement agreement for purposes of extending monopoly). Here, where Pfizer's claims of foreclosure rest on Janssen's discount and rebates strategy, allegations about Pfizer's own competing efforts are critical. It has failed to meet its burden.

---

[3] Pfizer also notes that the district court in *Eisai, Inc. v. Sanofi-Aventis U.S.* denied a motion to dismiss despite the plaintiff's failure to plead the specific products offered in the market. Opp. at 28 n.8. But the *Eisai* district court ruled without the benefit of the Third Circuit's ruling in *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 406 (3d Cir. 2016), which made clear that plaintiffs are required to do more to allege foreclosure from the market based on discounts and rebates.

### III. PFIZER FAILS TO ALLEGE THAT IT OFFERED MULTI-PRODUCT BUNDLES TO COMPETE FOR CONTRACTS WITH PAYORS OR PROVIDERS

The premise of Pfizer's complaint is that Janssen's discounts and rebates effectively blocked Pfizer from being able to compete. But if Pfizer had competitive options available to it that it elected not to pursue, its lack of success is its own responsibility, not antitrust injury. In a critical concession, Pfizer does not dispute that it did not allege any efforts to offer rebates on bundles of its own pharmaceutical or biologic products (or otherwise contend that it offered such bundled rebates). Nor does Pfizer contend that it has alleged facts suggesting an inability to do so. That is hardly surprising. Such a contention by one of the world's largest pharmaceutical companies would not pass the straight face test.[4] Instead, Pfizer contends that it is under no obligation to allege that it attempted to compete with Janssen's discounts and rebates because it has alleged a "multifaceted scheme" that includes not only "bundling" and "discounts and rebates" but also contractual exclusivity provisions between Janssen and payors and providers. Opp. at 19. But this argument distorts both Janssen's argument and Pfizer's own allegations, and misreads the relevant law.

Recounting how a defendant has allegedly competed in the marketplace does not excuse a plaintiff from pleading facts showing its inability to compete. Pfizer pleads no facts showing why any attempt to offer its own bundled rebates would be impossible or futile. Pfizer's citation of cases where plaintiffs did plead facts showing that they were unable to compete with the defendants' bundles, or cases regarding motions for summary judgment where courts found there were open issues of fact as to whether plaintiffs could offer their own competing bundles (Opp. at 23–24 & nn.5–6) does nothing to salvage Pfizer's claims. For example, in *In re Hypodermic*

---

[4] For 2016, Pfizer reported sales of more than $52 billion, including sales of eight products that each had sales of more than $1 billion. *See* Pfizer Form 10K for 2016, available at https://www.sec.gov/Archives/edgar/data/78003/000007800317000014/ pfe-12312016x10kshell.htm.

8

*Products*, the plaintiffs specifically alleged that the defendant's competitors were single-product companies or had smaller sets of products than the defendant, and accordingly could not match the discounts offered by the defendant. 2007 U.S. Dist. LEXIS 47438, at *40. And in *Universal Hospital Services v. Hill-Rom Holdings, Inc.*, Civ. A. No. SA-5-CA-32, 2015 U.S. Dist. LEXIS 154154 (W.D. Tex. Oct. 15, 2015), as in *SmithKline*, the plaintiff alleged that the defendant used a discount and rebate strategy involving its monopolized products to create an additional monopoly in the markets in which the plaintiff competed. *Id.* at *13–14; *see also SmithKline Corp. v. Eli Lilly & Co.*, 427 F. Supp. 1089, 1121 (E.D. Pa. 1976). Pfizer has made no such allegations here—and does not contest that it sells multiple, successful pharmaceutical products other than Inflectra on which it could presumably offer its own rebates.

Pfizer's reliance on the allegations that Janssen secured "exclusive" contracts with payors is equally misplaced with respect to bundled rebates and discounts as with pricing in general. First, Pfizer fails to plead why it was precluded from offering its own bundle in an effort to compete for "parity" treatment on any payor's formulary or for its own preferred status. *See, e.g.*, Compl. ¶ 59. But regardless, Pfizer's attempt to portray the allegedly exclusive contractual provisions as a separate "facet" of an alleged anticompetitive scheme from discounts and rebates ignores Pfizer's allegations that the contracts at issue were *obtained through discounts and rebates*. As Pfizer itself alleges, pharmaceutical manufacturers typically obtain contracts with payors and providers through the use of discounts and rebates (Compl. ¶ 52), and the contracts at issue in this case are specifically due to the favorable rebates offered by Janssen. *See id.* ¶¶ 63–64, 67, 74. The contracts are therefore a direct result of the rebates. While Janssen agrees with Pfizer that the court should look at a party's "conduct taken as a whole rather than considering

9

each aspect in isolation" (Opp. at 19), this means that Pfizer cannot artificially divorce the contracts with payors and providers from the rebate and discounts used to compete for them.

Furthermore, as noted above, the mere fact that Janssen entered allegedly exclusive contracts with payors is not evidence of anticompetitive conduct. *See supra* at 3–4. Here, Pfizer alleges that Janssen is using discounts and rebates to block competition, and Pfizer therefore is required to allege that it attempted to compete (or cannot compete) with these discounts and rebates, including through multi-product bundles.

The cases cited in Pfizer's brief do not counsel a different result. Pfizer's reliance on *SmithKline Corp. v. Eli Lilly & Co.*, 427 F. Supp. 1089 (E.D. Pa. 1976) is misplaced. In *SmithKline*, the court ultimately concluded that the defendant had monopolized the market for the product at issue (which competed with the plaintiff's product) by changing its rebating program to offer bundled discounts on the competing product and other products for which it also had a monopoly. The result of this rebating practice was that purchase of plaintiff's product would likely lead to the loss of rebates on all products, including the other products hospitals would have little choice but to buy due to the defendant's monopolies. Notably, the defendant did not offer any additional rebates to its customers under its new program; rather, it restructured its existing rebates so that a purchaser would lose even more rebates if it purchased the plaintiff's drug. *See SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1065 (3d Cir. 1978). On those facts—which included details about the precise rebates the plaintiff had offered in an unsuccessful attempt to compete with the defendant (427 F. Supp. at 1103–09)—the court found that the plaintiff was unable to compete.[5] That is not the case here. Pfizer does not allege that

---

[5] While Pfizer notes that Third Circuit's subsequent decision in *LePage's*, 324 F.3d 141 cited *SmithKline* favorably (Opp. at 22 n.4), it ignores the fact that the Third Circuit has subsequently clarified *LePage's* in light of its recognition that *LePage's* "has been the subject of much criticism." *Eisai*, 821 F.3d at 405

the other Janssen products allegedly included in the bundle (e.g., Stelara, Simponi, and Simponi Aria) are monopoly products.[6] Therefore, there can be no allegation that Janssen is using monopoly power to inappropriately leverage its position through the use of discounts and rebates. The fact that Pfizer may not have directly competing products is irrelevant to this analysis (Compl. ¶ 67); what is relevant is that Pfizer has failed to plead facts explaining its efforts to compete. Pfizer's failure to allege efforts to compete is fatal on a motion to dismiss. *See NicSand*, 507 F.3d at 453.

Pfizer's efforts to describe rebates on Remicade as its own "bundle" based on "contestable" versus "incontestable" Remicade patients do not advance its case. Opp. at 28–29. As an initial matter, as noted in Janssen's opening brief, the Third Circuit rejected an antitrust theory based on "incontestable" and "contestable" demand for the same product the only time it has ever been presented. *See Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 406 (3d Cir. 2016). Moreover, Pfizer's contention boils down to the assertion that Janssen should be offering fewer rebates and discounts (i.e., charging higher prices) to "incontestable" Remicade patients than to "contestable" Remicade patients, rather than the same price for all Remicade patients. But the Court does not need to reach these issues. Even if the rebates and discounts on Remicade could be severed to create a "bundle," under *Iqbal* and *Twombly*, Pfizer would be

---

n.35. Pfizer's additional argument (Opp. at 22 n.4.) that *Eisai* and *ZF Meritor*, 696 F.3d 254 "do not support the sweeping rule" that bundling is only anticompetitive where "a single-product producer is excluded through a bundled rebate program" ignores the fact that such language is included in both decisions. Regardless of whether this aspect was central to the holdings of both cases, this Court may (and should) consider the reasoned opinions from both cases in ruling here, where the facts are distinguishable from those in *LePage's* (or *SmithKline*). Indeed, Plaintiff's citation of the district court's decision on the defendant's motion to dismiss in *LePage's* is inapt for precisely that reason. *See* Opp. at 23 n.5.

[6] Indeed, Pfizer pleads other competing drugs for these products for their various indications. *See* Compl. ¶ 85.

required to show that it could not offer its own bundle on its product line. Here, Pfizer's conclusory allegations that it cannot compete are insufficient to meet this burden.

Finally, Pfizer's contention that a ruling on Janssen's argument regarding bundled rebates would require fact finding by the Court is without basis. Opp. at 24. If Pfizer had alleged (or could allege) facts sufficient to show its efforts to compete using its own bundles (or facts showing why it cannot compete), the Court would be required to credit its allegations. But the Court is fully capable of finding on a motion to dismiss that Pfizer has failed to plead sufficient facts to sustain its claim. No fact finding is required.

## CONCLUSION

For the foregoing reasons, Pfizer's complaint should be dismissed.

Dated: February 1, 2018

By: */s/ Leslie E. John*
Leslie E. John (PA Id. No. 62290)
Matthew I. Vahey (PA Id. No. 315920)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500
john@ballardspahr.com
vaheym@ballardspahr.com

William F. Cavanaugh (admitted *pro hac vice*)
Adeel A. Mangi (admitted *pro hac vice*)
Jonathan H. Hatch (admitted *pro hac vice*)
Jamison Davies (admitted *pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel: (212) 336-2000
wfcavanaugh@pbwt.com
aamangi@pbwt.com
jhatch@pbwt.com
jmdavies@pbwt.com

Thomas O. Barnett (admitted *pro hac vice*)
Ashley E. Bass (admitted *pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Tel: (202) 662-6000
tbarnett@cov.com
abass@cov.com

*Counsel for Johnson & Johnson and Janssen Biotech, Inc*.

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2018, I electronically filed the foregoing brief in support of Defendants' Motion to Dismiss using the CM/ECF system, which will send notification of such filing to all parties of record.

*/s/ Leslie E. John*