# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PFIZER INC.,<br><br>      Plaintiff,<br><br> v.<br><br>JOHNSON&JOHNSONandJANSSENBIOTECH INC.,<br><br>      Defendants. | Civil Action No.<br><br><br>17-cv-04180 |

**MEMORANDUM OF LAW IN SUPPORT OF JANSSEN'S MOTION TO COMPEL PFIZER TO ADD FOUR DOCUMENT CUSTODIANS AND FOR A RECIPROCAL LIMITED UPDATE OF THE PARTIES' DOCUMENT PRODUCTIONS**

**FILED UNDER SEAL**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS .............................................................................................4

I.    THE PFIZER EXECUTIVES' FILES CONTAIN RELEVANT AND
RESPONSIVE DOCUMENTS ...........................................................................4

    A.    John Young ...............................................................................................4

    B.    Berk Gurdogan ........................................................................................7

    C.    Ian Read and Albert Bourla ....................................................................7

II.    PFIZER HAS CONSISTENTLY REFUSED TO PROVIDE CRITICAL
DISCOVERY FROM THESE EXECUTIVES .....................................................8

III.    PFIZER HAS REFUSED TO AGREE TO A REASONABLE APPROACH TO
AN UPDATE OF PFIZER'S AND JANSSEN'S DOCUMENT PRODUCTIONS ..........9

ARGUMENT .............................................................................................................10

I.    JANSSEN HAS MET ITS BURDEN OF SHOWING THAT THE PFIZER
EXECUTIVES ARE LIKELY TO POSSESS UNIQUE RELEVANT
DOCUMENTS ...................................................................................................10

II.    PFIZER'S OBJECTIONS TO ADDING THE PFIZER EXECUTIVES AS
CUSTODIANS SHOULD BE REJECTED. .........................................................14

    A.    Pfizer's Claims of Undue Burden Are Conclusory and Without Merit.................14

    B.    Pfizer's Arguments Based on Timing Are Irreconcilable with the May
2020 Fact Discovery Cut-Off..................................................................15

    C.    Pfizer Cannot Avoid Discovery from Messrs. Young, Read, and Bourla
Based on Their Status as "Apex" Executives. ......................................16

III.    A LIMITED AND RECIPROCAL UPDATE OF DOCUMENT COLLECTIONS
IS NECESSARY AND APPROPRIATE .........................................................17

CONCLUSION............................................................................................................18

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AMG Nat'l Tr. Bank v. Ries*,
No. 06-cv-4337, 2009 U.S. Dist. LEXIS 47371 (E.D. Pa. June 3, 2009)................................18

*City of Sterling Heights Gen. Emps. Ret. Sys. v. Prudential Fin., Inc.*,
Civil Action No. 12-05275 (MCA) (LDW), 2015 U.S. Dist. LEXIS 110712
(D.N.J. Aug. 21, 2015)..........................................................................................................14

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
Civil Action No. 08-4168 (MLC), 2012 U.S. Dist. LEXIS 52885 (D.N.J. Apr.
12, 2012) ................................................................................................................................16

*Family Wireless #1, LLC v. Auto. Techs., Inc.*,
No. 3:15CV01310(JCH), 2016 U.S. Dist. LEXIS 65885 (D. Conn. May 19,
2016) ......................................................................................................................................14

*Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*,
297 F.R.D. 99 (S.D.N.Y. 2013) .............................................................................................15

*Great N.Y. Taxi Ass'n v. City of New York*,
No. 13 Civ. 3089, 2017 U.S. Dist. LEXIS 146655 (S.D.N.Y. Sept. 11, 2017) ......................13

*Haber v. ASN 50th St., LLC*,
272 F.R.D. 377 (S.D.N.Y. 2011) ...........................................................................................16

*Kleen Prods. LLC v. Packaging Corp. of Am.*,
No. 10 C 5711, 2012 U.S. Dist. LEXIS 139632 (N.D. Ill. Sep. 28, 2012).......................11, 14

*Marical, Inc. v. Cooke Aquaculture, Inc.*,
No. 1:14-cv-00366-JDL, 2016 U.S. Dist. LEXIS 193554 (D. Me. Aug. 9,
2016) ......................................................................................................................................11

*McLaughlin v. Bayer Essure, Inc.*,
No. 14-cv-7315, 2019 U.S. Dist. LEXIS 88383 (E.D. Pa. Apr. 30, 2019) .............................11

*Mt. Hawley Ins. Co. v. Felman Prod., Inc.*,
269 F.R.D. 609 (S.D.W.V. 2010) ..........................................................................................12

*Pfizer, Inc. v. Johnson & Johnson*,
333 F. Supp. 3d 494 (E.D. Pa. 2018) ......................................................................................1

*Rosinbaum v. Flowers Foods, Inc.*,
238 F. Supp. 3d 738 (E.D.N.C. 2017)....................................................................................16

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Williams v. CVS Caremark Corp.*,
   No. 15-5773, 2016 U.S. Dist. LEXIS 109708 (E.D. Pa. Aug. 18, 2016) ...............................11

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)..........................................................................................................10, 11

Fed. R. Civ. P. 26(b)(2)(C) .........................................................................................................11

Fed. R. Civ. P. 37(a) ......................................................................................................................1

iii

Defendants Johnson & Johnson and Janssen Biotech, Inc. (together, "Janssen") respectfully move, pursuant to Federal Rule of Civil Procedure 37(a), for an order compelling Plaintiff Pfizer Inc. ("Pfizer") to (i) produce responsive and non-privileged documents from the files of John Young, Berk Gurdogan, Ian Read, and Albert Bourla (the "Pfizer Executives"), and (ii) update its document collections and productions with respect to fifteen existing custodians and eight specific categories of non-custodial sources to encompass documents generated after Pfizer's original collections in the summer of 2018.

## PRELIMINARY STATEMENT

The Pfizer Executives are its Chief Business Officer, its former US President—Biosimilars and Sterile Injectables, and its current and former Chief Executive Officers. ████ ████████████████████████████████████████████████████ ██████████████████████████████████████████ █████████████████████████████████████████ ███████████████████████████ These are critical issues in this case. Pfizer argues that Inflectra has not been successful because of Janssen's contracting practices. But Janssen maintains that Inflectra's relative lack of commercial success is explained by other factors, including ██████████████████████████████████████ ████████████████████████████████████ █████████████████████ In denying Janssen's motion to dismiss, the Court acknowledged that Janssen's arguments about such other factors and Pfizer's competitive failures "may prove true after discovery." *Pfizer, Inc. v. Johnson & Johnson*, 333 F. Supp. 3d 494, 502 (E.D. Pa. 2018). Janssen needs the Pfizer Executives' documents to develop that record.

None of Pfizer's reasons for refusing this discovery withstand scrutiny. ***First***, Pfizer pleads undue burden, and argues that the Pfizer Executives' documents are likely to be

duplicative or cumulative of the documents produced already.  But these four executives held decision-making and strategic roles in Pfizer's organization, and ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ Adding these four individuals will not impose any disproportionate burden on Pfizer.  Janssen has already produced more than 7.7 million pages of documents, including documents from the files of 34 individual custodians, and has offered to produce documents from four more custodians.  Pfizer has produced only about 3.1 million pages of documents and has agreed to produce from a total of 28 custodians.  Adding these four custodians will not even bring Pfizer and Janssen to parity in terms of custodians, and Pfizer certainly will not come close to Janssen's production volume.

     ***Second***, Pfizer argues that Janssen's requests have come too late and "discovery is beyond a point" where Pfizer could add custodians.  But fact discovery does not close until May 2020.  Plenty of time remains in the schedule for Pfizer to collect and produce from the Pfizer Executives.  Moreover, the pace of identifying custodians was dictated by that of Pfizer's document productions, including its failure to meet the Court's originally set deadline for substantial completion, and its persistent refusal to compromise on custodians.  Pfizer itself appears to agree that there remains time to add custodians in that it has sought, and studiously maintains its right to request, additional Janssen custodians.

     ***Third***, Pfizer relies on the so-called "apex doctrine" with regard to Messrs. Young, Read, and Bourla.  (Pfizer does not assert this argument as to Mr. Gurdogan).  But the apex doctrine applies to depositions and not to the production of documents, which is the only thing at issue on this motion.  And in any event, the apex doctrine does not bar discovery where the witness was personally involved in relevant issues.  The Court may never be faced with a deposition dispute

involving the apex doctrine.  Whether Janssen will seek depositions of Messrs. Young, Read, or Bourla will depend on what their and others' documents show and any other evidence developed through discovery.

In addition to discovery from these individuals, Janssen also asks the Court to order Pfizer to engage in a limited and reciprocal update of its document collections and productions as proposed by Janssen, which will help ensure that this case is decided on a record that reflects the current state of the market.  Pfizer's current production is based on documents collected on or before June 15, 2018.  Those documents are already more than a year out-of-date in a fast-moving market.  Pfizer will ask the Court to grant injunctive relief and damages here based on the ongoing market effects that it alleges stem from Janssen contracts.  Pfizer must prove these continuing effects to in order to obtain this relief, and to defend against those claims Janssen must have discovery reflecting the current market conditions.  Janssen's proposed approach to updates is both reasonable and proportionate.  Janssen seeks updates limited to 15 custodians per side, chosen by the opposing parties, and a focused set of non-custodial documents described below.  Such updates would utilize the same search parameters as the original productions and cover the period from the prior production cut-off through the date of the supplemental collection pursuant to the Court's order.  Pfizer disagrees, and wants the parties to engage in individual-by-individual and source-by-source negotiations over the scope and methodology for any updates, which will inevitably lead to disputes and imperil the Court's revised discovery deadlines. Janssen's motion should be granted.[1]

---

[1] Janssen has filed a formal motion to compel rather than submit a letter seeking a telephonic conference under the Court' individual rules in compliance with the Court's oral instructions during the telephone conference on February 11, 2019.  ECF No. 83.

## STATEMENT OF FACTS

I.   **THE PFIZER EXECUTIVES' FILES CONTAIN RELEVANT AND RESPONSIVE DOCUMENTS**

A.   **John Young**

Mr. Young is Pfizer's Chief Business Officer and a member of the company's Executive Leadership Team.  Ex. 1.[2]  He previously served as Group President of Pfizer Innovative Health, which includes Pfizer's immunology unit.  *Id.*  He has been described as "the Pfizer executive overseeing its biosimilar business," which includes Inflectra.  Ex. 2.

Pfizer maintains that Mr. Young was not involved in the "day-to-day management of Inflectra" and that he merely "relied on employees with responsibility for the Inflectra biosimilar business in the U.S. who are already custodians."  Ex. 8.  ████████████████████████

████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

---

[2] All citations are to the accompanying Declaration of Jonathan H. Hatch ("Hatch Decl."), unless otherwise noted.

As with all of the Pfizer Executives, Janssen is aware of these communications only because Pfizer produced them from the files of current custodians who happened to be copied. Private communications among the Pfizer Executives—or those copied only to other non-custodians—have not been produced.  Janssen anticipates that the documents produced to date

are only the tip of the iceberg with regard to the involvement of the Pfizer Executives on key issues relating to Inflectra.

**B.      Berk Gurdogan**

Mr. Gurdogan became responsible for Inflectra in April 2017, when he became U.S. President—Biosimilars and Sterile Injectables.  Exs. 3, 10.  ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

**C.      Ian Read and Albert Bourla**

Mr. Ian Read served as Pfizer's CEO from December 2010 to January 2019, when he was succeeded as CEO by Mr. Albert Bourla.  Although Pfizer contends that Mr. Read and

Mr. Bourla were not personally involved in managing Pfizer's Inflectra business beyond

receiving general updates, ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

As to Mr. Bourla, no documents about his personal involvement in the Inflectra business

are yet available because ████████████████████████████████████████

████████████  This is most likely attributable to the fact that per representations from Pfizer,

Pfizer's collection of documents does not extend past June 15, 2018, and Mr. Bourla did not

become Pfizer's CEO until January 2019.  Nor has Pfizer produced from other senior executives

such as Mr. Young, who are likely to be in contact with the CEO.  Nevertheless, it stands to

reason that Mr. Bourla's personal involvement in managing Inflectra is at a minimum

comparable to Mr. Read's.

## II.     PFIZER HAS CONSISTENTLY REFUSED TO PROVIDE CRITICAL DISCOVERY FROM THESE EXECUTIVES

Janssen requested that Pfizer add these custodians after information about their roles

emerged through discovery, including initial Pfizer productions.  *See* Exs. 4-20.  Janssen first

asked Pfizer to add Mr. Young as a custodian in March 2019.  Ex. 6.  Janssen first sought to have

Mr. Gurdogan added in May 2019.  Ex. 11.  And it sought Messrs. Read and Bourla in July 2019.

Ex. 16.  Janssen sent its letter naming Messrs. Read and Bourla after the Court entered an order

extending the discovery schedule for four months and as part of a proposal for all sides to identify any remaining custodians to ensure that discovery could be timely completed.  *Id.*

Pfizer, however, has flatly and consistently refused to countenance any production from Messrs. Young, Read or Bourla.  Ex. 19.  As to Mr. Gurdogan, Pfizer has been willing to produce from his files only in return for compromises that Janssen has considered unreasonable, such as linking production to agreement to extend the discovery schedule.  *See* Ex. 13.

The parties' most recent conferrals regarding these custodian issues took place on August 13 and 20, 2019.  During those discussions, Pfizer continued to refuse to add Messrs. Young, Read or Bourla—as to the latter two primarily on the grounds that Janssen had requested them too late in the discovery process—and  threatened to retaliate by seeking Johnson & Johnson Chief Executive Officer Alex Gorsky as a custodian.  Pfizer also continued to refuse to add Mr. Gurdogan as a custodian without unreasonable preconditions.  Exs. 19-20.  This motion ensued.

## III.   PFIZER HAS REFUSED TO AGREE TO A REASONABLE APPROACH TO AN UPDATE OF PFIZER'S AND JANSSEN'S DOCUMENT PRODUCTIONS

Pfizer has thus-far collected and agreed to produce responsive documents through June 15, 2018, while Janssen has done so through September 27, 2018.  Exs. 55-56.

The Court will need to decide this case based on market information that is as close to current as possible.  Pfizer's productions, however, are already more than a year out-of-date.  In a fast-moving market, where the contracts at issue are subject to regular renegotiation and revision, and market-share is shifting, the discovery record from Pfizer is already stale.  But wholesale updates of the productions are neither feasible nor cost-effective given the size of the record and the number of custodians and non-custodial sources that have already been subject to discovery. For this reason, Janssen has proposed that the parties agree to a limited and reciprocal update of

their document collections.   Specifically, Janssen has proposed that the parties agree to a limited

and reciprocal update of 15 existing custodians per side (to be chosen by the opposing party),

and a reciprocal update of a limited set of non-custodial documents consisting of contracts,

transactional data, Average Sales Price ("ASP") data, profit and cost information, marketing

materials, sales training materials, business plans, and pricing committee minutes.  Such updates

would utilize the same search and production methodology as the original production and would

cover the period from the prior production date cut-off through to the date of supplemental

collection.  Ex. 16.

Janssen broached this proposal to Pfizer on July 30, 2019 and again on August 9, 2019,

Exs. 16 & 18, but did not receive a response from Pfizer for several weeks.  On August 16, 2019,

Pfizer rejected Janssen's simple and easy-to-administer proposal, instead arguing that the parties

should separately negotiate the parameters of any update separately with regard to each

custodian, document sources, and subject matter, including the search terms that would be

encompassed.  Ex. 19.  Pfizer did agree with regard to the need to update contracts, transactional

data, and business plans; but nothing else.  The parties met and conferred on this issue again on

August 20, 2019, but Pfizer maintained its position and the parties were unable to reach

agreement, necessitating this motion.  Ex. 20

## ARGUMENT

## I.     JANSSEN HAS MET ITS BURDEN OF SHOWING THAT THE PFIZER EXECUTIVES ARE LIKELY TO POSSESS UNIQUE RELEVANT DOCUMENTS.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  For

this reason, "[t]he selection of custodians must be designed to respond fully to document

requests and to produce responsive, nonduplicative documents during the relevant

period." *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 U.S. Dist. LEXIS 139632, at *46 (N.D. Ill. Sep. 28, 2012).  When determining whether to grant or limit discovery, the Court considers whether "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

"A party moving to compel discovery bears the initial burden of proving the relevance of the requested information.  Once that initial burden is met, the party resisting discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under [Rule 26], or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  *Williams v. CVS Caremark Corp.*, No. 15-5773, 2016 U.S. Dist. LEXIS 109708, at *13-14 (E.D. Pa. Aug. 18, 2016) (quotation marks omitted).  In sum, the Court must weigh "the legitimate need of the discovering party for information to prepare for dispositive motions and trial . . . on the one hand and the avoidance of disproportionate hardship on the producing party on the other."  *McLaughlin v. Bayer Essure, Inc.*, No. 14-cv-7315, 2019 U.S. Dist. LEXIS 88383, at *51 (E.D. Pa. Apr. 30, 2019).

Courts will require custodians to be added when it is likely that they will have relevant materials and their addition does not violate proportionality or cause undue burden.  *See, e.g.*, *Marical, Inc. v. Cooke Aquaculture, Inc.*, No. 1:14-cv-00366-JDL, 2016 U.S. Dist. LEXIS 193554, at *7-8 (D. Me. Aug. 9, 2016) (ordering production of documents from custodian who "maintained a position of prominence in Defendants' management and likely was involved in"

negotiations at issue); *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 269 F.R.D. 609, 620 (S.D.W.V. 2010) (granting motion to compel additional custodians even though it was "highly likely that the [requested custodians] will produce . . . duplicates of previously produced materials," because "it is reasonable to believe that they will have additional, highly relevant materials . . . which were not shared with [existing custodians]").

As set forth above, each of the Pfizer Executives is likely to possess unique, non-duplicative documents relevant to assessing the reasons why Inflectra has not met Pfizer's sales expectations.  Mr. Young ███████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████ He is highly likely to possess unique responsive documents that no other custodian will have that show that ████████████████████████████ ████████████████████████ may account, in part, for Inflectra's lack of success. Mr. Gurdogan is similarly likely to possess unique documents about ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ Mr. Read and Mr. Bourla are highly likely to possess unique responsive documents that no other custodian will have about ████████████████████████████████████████████████████ ██████████████ And all four of them are all likely to possess unique documents about ████████ ████████████████████████████████████████ █████████████████████████████

These documents will likely fill gaps in the record regarding Pfizer's high-level pricing and strategic decisions.  For example, the Pfizer Executives' documents will likely reflect ████████ █████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████ Their

documents will likely also show ████████████████████████

█████████████████████████████ Discovery on such

issues is necessary to respond to Pfizer's central allegation that all of its market woes are

attributable to Janssen's supposedly exclusionary contracts, and not its own failures.  Pfizer's

critical strategic choices appear to have been made or sanctioned at the highest levels of the

company, and Janssen cannot adequately explore them without the documents of the executives

involved.

Janssen cannot obtain these documents from any other source and "[g]iven the

seriousness of the allegations levied against the defendants, the amount of money at stake, the

size of [the] enterprises, and the potential evidentiary value of documents in the custodians'

possession, the additional custodians are proportional to the needs of the case."  *Great N.Y. Taxi*

*Ass'n v. City of New York*, No. 13 Civ. 3089, 2017 U.S. Dist. LEXIS 146655, at *15 (S.D.N.Y.

Sept. 11, 2017) (citation omitted).  According to Pfizer, the fate of the U.S. biosimilars market

turns on this litigation, which it claims is "viewed as a bellwether for biosimilars in the United

States."  ECF No. 88-1 at 1–2.  And while damages reports are not due until next year, there is

little doubt that Pfizer's lost profits claim and the class plaintiffs' overcharge claims will be

sizable—potentially in the hundreds of millions of dollars.  Pfizer—one of the largest

pharmaceutical companies in the world—should not be heard to now argue that this litigation

does not rise to a level that would merit the collection of documents from the Pfizer Executives.

Janssen has met its burden of showing that these individuals are likely to possess responsive,

nonduplicative documents.

## II.   PFIZER'S OBJECTIONS TO ADDING THE PFIZER EXECUTIVES AS CUSTODIANS SHOULD BE REJECTED.

### A.   Pfizer's Claims of Undue Burden Are Conclusory and Without Merit.

Pfizer's conclusory and unsupported claims of undue burden should be rejected.  Pfizer has never specified how many documents it would be required to produce from these custodians, nor has Pfizer provided an estimate of how many hours of attorney time or support-staff hours would be required.  *See, e.g.*, *Kleen Prods.*, 2012 U.S. Dist. LEXIS 139632, at *48.  But even if it had provided such details, any claims of undue burden would be implausible given the scope and scale of the discovery that has already occurred in this case on all sides.

Moreover, even if it is true, as Pfizer claims, that many of the responsive files possessed by these four custodians are significantly duplicative of other custodians' files, then that only weighs in favor of granting this motion, because Pfizer's burden is likely to be minimal once it applies standard discovery de-duplication tools, which are electronic software tools that automatically remove from the set of documents that need to be reviewed those that have already been produced from other custodians or sources.  *See, e.g.*, *City of Sterling Heights Gen. Emps. Ret. Sys. v. Prudential Fin., Inc.*, Civil Action No. 12-05275 (MCA) (LDW), 2015 U.S. Dist. LEXIS 110712, at *8 (D.N.J. Aug. 21, 2015) ("[A]llowing plaintiffs a moderate number of additional custodians does not seem disproportionate to the size and scale of this action.  The Court understands that there are electronic de-duping tools that may be utilized to limit defendants' review and production of duplicative documents, reducing some of the burden . . . of producing information from additional custodians.").[3]

---

[3] *See also Family Wireless #1, LLC v. Auto. Techs., Inc.*, No. 3:15CV01310(JCH), 2016 U.S. Dist. LEXIS 65885, at *7 (D. Conn. May 19, 2016) ("The Court is not persuaded that the addition of the six proposed custodians would be unduly burdensome for defendant. . . . [L]imitations on search parameters can be implemented so as to exclude the production of duplicative emails, addressing the concern that this production would consist of many emails that had been previously produced through the prior searches of

Pfizer's claims of burden might be more compelling if Janssen was seeking a grossly high or disproportionate number of custodians. But that is not the case here. As noted above, adding these four custodians will not even bring Pfizer and Janssen to parity in terms of custodians—Janssen has committed to producing from 38 custodians, whereas granting this motion would bring Pfizer's total to 32 custodians—and it is highly unlikely that Pfizer will come close to the volume of Janssen's productions even with these added custodians given the relative sizes of productions to date. Documentary discovery from these four individuals imposes no undue burden on Pfizer.[4]

### B.  Pfizer's Arguments Based on Timing Are Irreconcilable with the May 2020 Fact Discovery Cut-Off.

Pfizer objects that Janssen has requested these four additional custodians too late in the discovery process. But Janssen has been pursuing the Pfizer Executives' documents for some time. Janssen requested Mr. John Young over five months ago, requested Mr. Gurdogan over three months ago, and requested Mr. Read and Mr. Bourla several weeks ago. And the timing of Janssen's requests was driven in large part by Pfizer's slow pace of document productions, as those documents played an important role is highlighting the business roles of these supplemental custodians.

Regardless, fact discovery does not close until May 29, 2020. As noted above, Janssen specifically asked Pfizer to come to a reasonably final resolution on custodians now to ensure that these discovery deadlines can be maintained. There remains ample time in the discovery

---

the higher-level custodians. Using 'de-duplication' measures to limit the search should alleviate some of the cost and time concerns that defendant raises."); *Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 106 (S.D.N.Y. 2013) (a party may "utilize procedures to eliminate duplicative search output from their production").

[4] Pfizer has not argued that adding these individuals as custodians would impose any burden on the Pfizer Executives themselves, nor could it. As with any document collection, documents will doubtless be electronically collected by e-discovery professionals and reviewed for production by attorneys.

schedule for productions from these custodians, or from a limited number of others should a

compelling need become apparent in discovery. *Cf., e.g.*, *Eisai Inc. v. Sanofi-Aventis U.S., LLC*,

Civil Action No. 08-4168 (MLC), 2012 U.S. Dist. LEXIS 52885, at *32-33 (D.N.J. Apr. 12,

2012) (compelling party to produce discovery from three custodians and noting that the court had

not set a deadline by which all custodians must be identified). Pfizer apparently agrees:  it has

itself reserved the right to pursue, and continues to seek, more than four additional Janssen

custodians. *See* ECF No. 88-1 at 12 ; Ex. 17.

### C.    Pfizer Cannot Avoid Discovery from Messrs. Young, Read, and Bourla Based on Their Status as "Apex" Executives.

Pfizer argues that it should not have to provide document discovery from Messrs. Young,

Read, and Bourla because they are "apex" executives. *See* Exs. 12, 19.  But Pfizer's invocation

of the "apex" doctrine is misguided.  The apex doctrine does not usually apply to document

discovery.  "[C]ourts applying the apex doctrine typically have done so to protect executives

from the expense only of a deposition," and there are few if any cases in which courts have

applied the apex doctrine "to shield an executive from a request for production of documents."

*Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 749 (E.D.N.C. 2017) (collecting cases).

There is no "blanket prohibition on taking discovery from high-level executives." *Haber v. ASN*

*50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011).

But even if the "apex" doctrine did apply to document discovery, it does not apply if the

"executive possesses 'unique' personal knowledge of the facts in issue and the requested

information cannot be obtained from alternative sources." *Id.*   As explained above, Mr. Young

has unique personal knowledge of the facts in issue because ███████████████████████

███████████████████████████████████████████████ Further,

documents produced by Pfizer suggest that Mr. Young ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████

Janssen has produced or is willing to produce discovery from three top-level executives with positions comparable to those of Pfizer's "apex" witnesses.  While Janssen seeks documents from Pfizer Chief Business Officer Mr. Young, it has already named as one of its custodians Mr. Scott White, Janssen's Company Group Chairman for North America Pharmaceuticals, whose positions is comparable to Mr. Young's.  Ex. 4.  Similarly, while Janssen seeks documents from Pfizer' current and former CEOs, it is willing in response to produce from its current and former Worldwide Chairman, Pharmaceuticals for Johnson & Johnson (Jennifer Taubert and Joaquin Duato.)  These Janssen executives are the senior-most executives at the company with responsibility focused on the pharmaceuticals business—a role comparable to Pfizer's CEOs.[5]

## III.    A LIMITED AND RECIPROCAL UPDATE OF DOCUMENT COLLECTIONS IS NECESSARY AND APPROPRIATE

The Court should also order Pfizer to engage in the limited and reciprocal update of the document collections proposed by Janssen as described above, which will ensure that this case is decided on a record that reflects the current state of the market, and prevent needless disputes

---

[5] As noted above, Pfizer has stated in conferrals that it will seek documentary discovery from Johnson & Johnson's Chief Executive Officer Alex Gorsky if Janssen pursues discovery from its senior executives. Mr. Gorsky's role is not comparable to Pfizer's CEOs, because Mr. Gorksy has ultimate responsibility for all three sectors of Johnson & Johnson's business (medical devices, consumer products, and pharmaceuticals), whereas Pfizer does not have a comparable structure and its business is limited to pharmaceuticals.  For that reason, the appropriate comparator to Pfizer's CEO in the Johnson & Johnson structure is the role of Worldwide Chairman, Pharmaceuticals.

over the parameters and timing of the update.  Pfizer's alternative preferred approach of custodian-by-custodian and source-by-source negotiations on both the parameters of production and search methodologies will mire the parties in endless disputes and imperil the schedule.  By contrast, Janssen's proposal is simple and obviates the need for any negotiation.  The Court should adopt that approach and order a limited reciprocal update encompassing 15 custodians per side, chosen by the opposing parties, and an update consisting of a limited set of non-custodial documents as described above.  These updates would cover the period from the prior production date cut-off through the date of the supplemental collection.  Such an order would fall well within the Court's "broad discretion to manage discovery" under the Federal Rules of Civil Procedure.  *AMG Nat'l Tr. Bank v. Ries*, No. 06-cv-4337, 2009 U.S. Dist. LEXIS 47371, at *1 (E.D. Pa. June 3, 2009) (Joyner, J.).

## CONCLUSION

For the foregoing reasons, the Court should grant Janssen's motion by compelling Pfizer to (a) produce responsive, nonprivileged documents from the custodial files of Messrs. John Young, Berk Gurdogan, Ian Read, and Albert Bourla, and (b) update its document collections and productions for fifteen custodians and eight specific categories of non-custodial sources per side as set forth above.

Dated:  August 23, 2019

Respectfully submitted,

*/s/ Leslie E. John*

Leslie E. John (PA Id. No. 62290)
Matthew I. Vahey (PA Id. No. 315920)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500
john@ballardspahr.com

vaheym@ballardspahr.com

William F. Cavanaugh (*pro hac vice*)
Adeel A. Mangi (*pro hac vice*)
Stephanie Teplin (*pro hac vice*)
Jonathan H. Hatch (*pro hac vice*)
George A. LoBiondo (*pro hac vice*)
Benjamin F. Jackson (*pro hac vice*)
Sara A. Arrow (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel: (212) 336-2000
wfcavanaugh@pbwt.com
aamangi@pbwt.com
steplin@pbwt.com
jhatch@pbwt.com
globiondo@pbwt.com
bjackson@pbwt.com
sarrow@pbwt.com

Thomas O. Barnett (*pro hac vice*)
Ashley E. Bass (*pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Tel: (202) 662-6000
tbarnett@cov.com
abass@cov.com

*Counsel for Johnson & Johnson
and Janssen Biotech, Inc.*

**CERTIFICATE OF CONSULTATION**

I hereby certify that as set forth in the accompanying Declaration of Jonathan Hatch and attached exhibits, counsel for Plaintiffs, including Mr. Robert Milne, Mr. Ross Elfand, and Mr. David H. Suggs, and counsel for Defendants Johnson & Johnson and Janssen Biotech, Inc. (collectively "Janssen"), including Mr. Jonathan H. Hatch, Mr. George A. LoBiondo, and Mr. Benjamin F. Jackson, conferred in good faith in an effort to resolve the disputes over the number of custodians and the scope of an update of the parties' document collections through written correspondence and through telephone calls on February 21, 2019; March 31, 2019; April 7, 2019; May 21, 2019; July 1, 2019; July 8, 2019; August 13, 2019; and August 20, 2019. The parties were unable to resolve this dispute.

*/s/ William F. Cavanaugh*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2019, I served the foregoing memorandum of law in support of Janssen's Motion to Compel Pfizer to Add Four Document Custodians and for a Reciprocal Limited Update of the Parties' Document Collections on the following counsel of record by electronic mail:

- Elliott E. Dionisio, elliott.dionisio@whitecase.com
- Ross E. Elfand, relfand@whitecase.com
- H. Robert Fiebach, rfiebach@cozen.com
- Michael J. Gallagher, mgallagher@whitecase.com
- Trisha M. Grant, trisha.grant@whitecase.com
- Robert A. Milne, rmilne@whitecase.com
- David H. Suggs, dsuggs@whitecase.com
- Peter M. Ryan, pryan@cozen.com

*/s/ Benjamin F. Jackson*